UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SAWARIMEDIA LLC, DEBORAH PARKER, JUDY KELLOGG, and PAUL ELY, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) ) | |
| GRETCHEN WHITMER, Governor of Michigan, JOCELYN BENSON, Secretay of State of Michigan, and JONATHAN BRATER, Director of the Michigan Bureau of Elections, in their official capacities, | ) ) ) ) ) ) ) | Hon. |
| Defendants. | ) ) ) | |

## PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

Pursuant to Fed. R. Civ. P. 65(a), Plaintiffs SawariMedia LLC, Deborah Parker, Judy Kellogg, and Paul Ely (collectively, "Plaintiffs"), move for a temporary restraining order and/or preliminary injunction against Defendants Gretchen Whitmer, Jocelyn Benson, and Jonathan Brater (collectively, "Defendants"), ordering them to refrain from enforcing the signature requirements and filing deadline prescribed in M.C.L. § 168.471.

In support of their motion, Plaintiffs submit the following Brief in Support and their Declarations (Exhibit A), confirming that the Plaintiffs are likely to succeed on the merits with respect to the unconstitutionality of M.C.L. § 168.471 as applied, considering the extraordinary measures taken by state and federal governments to fight the coronavirus pandemic, including Governor Whitmer's Executive Order 2020-21, which makes it a misdemeanor and/or civil infraction for

Michigan residents to leave their homes for non-essential purposes.

Absent the issuance of a temporary restraining order, the Plaintiffs will incur irreparable injury because the ballot initiative they have sponsored and chosen to support, will not appear on the November 3, general election ballot, and the voters across Michigan will be deprived of a meaningful opportunity to vote for it. The balance of equities tips in favor of the Plaintiffs because Defendants' enforcement of the signature requirements and filing deadline prescribed by statute is not, in light of the current pandemic, narrowly tailored to meet any compelling or legitimate State interest. Moreover, the inclusion of the Plaintiffs' initiative on the ballot will serve the public interest by allowing the Plaintiffs and those who wish to vote for the initiative, the freedom to express their First Amendment rights.

Local Rule 7.1(a)(1) requires Plaintiffs to ascertain whether this motion will be opposed. Because the Plaintiffs are acting In pro per, and because this motion was filed shortly after the Plaintiffs filed their Complaint, no attorney for Defendants has entered an appearance. Nevertheless, the Plaintiffs have sought concurrence in the relief sought in this motion by attempting the following contact on or about May 4, 2020 between the hours of 9 AM and 10 AM with Defendant, Gretchen Whitmer at (517) 373-4000, Jocelyn Benson at (517) 335-2724 and Jonathan Brater at (517) 241-2747. Messages were left for each of the Defendants, but as of the filing of this motion, no response was received.

LOCAL RULE CERTIFICATION: I, Amani Sawari, of SawariMedia, certify that this document complies with Local Rule 5.1(a), including: double spaced; at least one-inch margins; consecutive page numbering; and type size of all text and footnotes that is no smaller than 14 point font. I also certify that it is the appropriate length. Local Rule 7.1(d)(3).

2

Respectfully Submitted,

SAWARIMEDIA LLC

By: _____

Amani Sawari
Plaintiff, In pro per
P.O. Box 2278
Detroit, MI 48202
248-795-0886
amanisawari@gmail.com

Dated: May 4, 2020

_____
Deborah Parker
Plaintiff, In pro per
21908 Gaukler St.
St. Clair Shores, MI 48080
313-550-2081
alinosi@yahoo.com

_____
Judy Kelloggo
Plaintiff, In pro per
2450 Krouse Rd.
Lot #337
Owosso, MI 48867
989-277-3228
judykellogg95@gmail.com

_____
Paul Ely
Plaintiff, In pro per
12646 North Red Bud
Buchanan, MI 49107
269-635-1611
tlc.greenyard@yahoo.com

## CERTIFICATE OF SERVICE

THE UNDERSIGNED certifies that on the 4th day of May, 2020, the foregoing paper was filed with the Clerk of the Court by placing the same in an envelope with enough pre-paid first class postage to be delivered to Clerk of the Court, United States District Court, Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit, MI 48202, and by placing that envelope in a US postal service collection box in Detroit, Michigan.

_____
Amani Sawari

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAWARIMEDIA LLC, DEBORAH PARKER,      )
JUDY KELLOGG, and PAUL ELY,           )
                                      )
            Plaintiffs,               )          Civil Action No.
                                      )
        v.                            )
                                      )
GRETCHEN WHITMER, Governor of         )          Hon.
Michigan, JOCELYN BENSON, Secretay    )
of State of Michigan, and JONATHAN    )
BRATER, Director of the Michigan      )
Bureau of Elections, in their official )
capacities,                           )
                                      )
            Defendants.               )

PLAINTIFFS' BRIEF IN SUPPORT OF MOTION FOR TEMPORARY
RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

## TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ................................................ ii

TABLE OF AUTHORITIES ........................................................ iii

II.    STATEMENT OF FACTS ..................................................... 1

III.   LEGAL STANDARD ........................................................ 5

IV.    ARGUMENT .............................................................. 5

## STATEMENT OF ISSUES PRESENTED

1.  Whether Plaintiffs are likely to succeed on the merits.

    a.  Whether M.C.L. § 168.471 is unconstitutional as applied to SawariMedia LLC as a sponsor of a statewide ballot initiative petition in light of the unprecedented actions taken in response to the Covid-19 global pandemic, including Governor Whitmer's Executive Order making it a criminal and/or civil violation for people to leave their home unless they qualify as an essential worker.

    b.  Whether M.C.L. § 168.471 is unconstitutional as applied to the Plaintiffs as qualified registered voters in light of the unprecedented actions taken in response to the Covid-19 global pandemic, including Governor Whitmer's Executive Order making it a criminal and/or civil violation for people to leave their homes unless they qualify as an essential worker.

    c.  Whether the Defendants' refusal to apply this Court's previous Order in Esshaki v. Whitmer et al., to the Plaintiffs in this case, is unequal protection under the law, and thereby a violation of the Plaintiffs constitutional right.

2.  Whether the Plaintiffs are likely to suffer irreparable harm in in the absence of this Court's issuance of a temporary restraining order prohibiting Defendants from enforcing M.C.L. § 168.471 or other alternative relief this Court deems necessary.

3.  Whether the balance of equities tips in favor of the Plaintiffs.

4.  Whether a temporary restraining order is in the public interest.

## TABLE OF AUTHORITIES

Ne. Ohio Coal. For Homeless & Serv. Employees Int'l Union, Local 1199 v.
Blackwell, 467 F.3d 99, 1009 (6th Cir. 2006) .................................   5

Shelby Cty. Advocates for Valid Elections v. Hargett, 348 F.Supp.3d 764, 769
(W.D. Tenn. 2018) (internal citations omitted) .............................   5

Graveline v. Johnson, 336 F.Supp.3d 801, 807 (E.D. Mich. 2018) (internal
citations omitted) ...................................................... 5, 7

Williams v. Rhodes, 393 U.S. 23, 30, 89 S. Ct. 5, 10 (1968) ................. 6, 8

Westberry v. Sanders, 393 U.S. 1, 17, 84 S. Ct. 526, 525 (1964) ..............   6

Lawarence v. Blackwell, 430 F.3d 368, 373 (6th Cir. 2005) ...................   6

Uniroyal Goodrich Tire Co. v Hudson, 856 F. Supp.348, 356 (E.D. Mich.1994) ....   8

Elrod v. Burns, 427 U.S. 347, 373-74 (1976) .................................   8

Libertarian Party of Ohio v. Blackwell, 462 F.3d 579, 593 (6th Cir. 2006)
(internal citations omitted) ...............................................   8

Illinois State B. of Elections v. Socialist Workers Party, 440 U.F. 173, 184,
99, S. Ct. 983, 990 (1979) ..................................................   9

ACLU v. Ashcroft, 322 F.3d 240, 251 n.11 (3d Cir. 2003) .....................   9

## BRIEF IN SUPPORT

Plaintiffs SawariMedia LLC, Deborah Parker, Judy Kellogg, and Paul Ely (collectively "Plaintiffs"), respectfully submit this brief in support of their motion for temporary restraining order and/or preliminary injunction.

## I.    STATEMENT OF FACTS
### SawariMedia LLC's Campaign

SawariMedia LLC ("SawariMedia") is a legally formed corporation that was founded by Amani Sawari. SawariMedia is an organization comprised of like-minded individuals who have come together for the advancement of a political issue that they believe the Michigan electors should have a chance to vote on in November, 2020. SawariMedia has been diligently campaigning since the summer of 2019. SawariMedia has spent thousands of dollars in its attempt to educate the electors on the political issue that was the focus of the ballot initiative filed with the Secretary of State on January 16, 2020. SawariMedia has created a website entirely devoted to the initiative, has moderated several town-hall meetings focussed entirely on the initiative, one of which was comprised of two Michigan legislators who endorsed the initiative. SawariMedia has also hosted several training seminars for the individuals all across the state who were circulating the petition to collect the required number of signatures to secure the initiatives place on the November ballot. SawariMedia has also purchased more than thirty-four thousand (34,000) copies of the initiative petition. The support for the initiative has been overwhelming.

Pursuant to Michigan election law, to appear on the official general ballot, SawariMedia is required to file with the Michigan Secretary of State's office by May 27, 2020, at least three hundred thousand and forty-seven signatures of qualified and registered electors residing in the state of Michigan. M.C.L. § 168.471.

1

SawariMedia and its campaign team implemented a plan to collect the required number of signatures early on in the campaign. This plan included "pop-up" and "pick-up and drop-off" locations all across the state, where qualified, and registered electors could visit to sign the petition, as well as pick up copies of the petition to circulate amongst their own networks. SawariMedia, its staff, and its supporters have been working diligently, and have already collected approximately two-hundred fifteen thousand (215,000) valid signatures. Collecting signatures is a time-consuming process, which requires close contact with electors who reside in the state of Michigan.

### Government response to Covid-19

On or around March 15, 2020, President Trump rolled out his "15 days top slow the spread" initiative (the "Initiative"). This Initiative asked people to practice social distancing and to take other measures to prevent the spread of the novel SARS-CoV-2 virus ("Covid-19"). On March 29, President Trump extended this initiative to at least April 30, 2020.

To comply with this Initiative and to protect Michigan's citizens and campaign staff, SawariMedia and its staff postponed many of its efforts to collect signatures. This included several planned and well-organized town-halls and signature collecting events, to include those scheduled to occur at the University of Michigan, Ann Arbor.

On March 10, 2020, in response to the unprecedented Covid-19 pandemic, which has disrupted nearly every aspect of American life, Governor Whitmer issued Executive Order 2020-4, declaring a state of emergency across the state of Michigan. Approximately two weeks later, on March 23, 2020, Governor Whitmer issued Executive Order 2020-21 (the "Stay-home Order" or the "Order") (Exhibit B) The Order went into effect on March 24, 2020 and was recently extended until at least May 15, 2020. The

gravity of the situation and the epidemiology experts strongly indicate that even if the Order is not extended further, the social distancing recommendation will most likely be extended long past the May 27 Deadline.

Whitmer's Stay-home Order is to be construed broadly. That Order makes it a criminal and/or civil infraction for a person to leave his or her home unless that person is a worker "necessary to sustain or protect life or to conduct minimum basic operations" ("Essential Worker"). (Exhibit B). The Stay-home Order further requires that Essential Workers who leave their homes must maintain social distancing standards by remaining at least six feet away from others. Neither SawariMedia, as the sponsor of the ballot initiative, or SawsariMedia's campaign staff fall within the exception.

### Michigan Secretary of State refuses to extend the deadline

On or around March 24, 2020, the Michigan Secretary of State informed SawariMedia that there would be no changes to the dealine, or the number of signatures required, to have the initiative placed on the November ballot.

On or around April 15, 2020, after several more calls to the Secretary of State's office to inquire about accommodations due to the extraordinary circumstances related to the pandemic and Stay-home Order, a SawariMedia staff member received an email from the Bureau of Elections that stated "As of now nothing has changed. Updates will be posted on our website at www.Michigan.gov/Elections." The email was sent from elections@michigan.gov. As of the filing of this motion, no changes to the existing rules had been published. The only changes posted to the website were posted on April 21, 2020, and relate **ONLY** to candidates who were circulating petitions in an attempt to qualify for the August primary ballot. Those changes, which included an extension of the deadline, the use of electronic signatures, and a reduction in the number of required signatures, were the direct

3

result of this Court's ruling in Esshaki v. Whitmer, et al. See 2:20-cv-10831-TGB-EAS.

Defendants' enforcement of the Deadline for ballot initiative petitions is inconsistent with not only this Court's decision in Esshaki v. Whitmer, Id., but with other actions the Secretary of State has taken during these unprecedented times. This includes the closing of the Secretary of State offices, which, due to their closures being attached to the Stay-home Order, are not expected to open before May 15, 2020, at the earliest. (Exhibit C) Additionally, the Secretary of State has indicated that it will conduct local elections in May through mail ballots, and not in person. Similarly, on March 25, 2020, recognizing the severity of this pandemic, Governor Whitmer issued Executive Order 2020-22, extending the canvassing deadline of the state's primary election on April 24, 2020. And on March 29, 2020, Governor Whitmer issued Executive Order 2020-30, waiving many healthcare related regulations, including liability for health care workers.

These extraordinary measures taken by state officials at the highest level of government underscore the challenges we face as a state and nation during this pandemic. Under these unprecedented circumstances, there is absolutely no compelling or legitimate state interest to enforce the Filing Deadline at issue here. Most certainly considering this Court's April 20, 2020, Order.

The enforcement of the Filing Deadline effectively prevents SawariMedia, and the supporters of the initiative, through no fault of their own, from getting the initiative on the ballot, and allowing those same individuals to vote on an issue they deem worthy of their vote. Over the last several months, SawariMedia has expended countless hours and other resources campaigning. The enforcement of the Deadline severely injures each of the Plaintiffs, as well as the thousands of supporters across this state, and continues to impose severe burdens on SawariMedia because if it is enforced, they will not be able to get their initiative on the

4

ballot.

Although SawariMedia has tried to adapt to these burdensome hurdles by mailing copies of the petition to supports who wish to sign it (Exhibit D), it has become cost prohibitive, and the US Postal Service is running several weeks behind in the processing of mail across Michigan.

## II.    LEGAL STANDARD

Rule 65 of the Federal Rules of Civil Procedure govern motions for temporary restraining orders ("TRO") and preliminary injunctions. The court considers several factors to determine whether to issue a TRO. Those facts are "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." Ne. Ohio Coal. for Homeless & Serv. Employees Int'l Union, Local 1199 v. Blackwell, 467 F.3d 999, 1009 (6th Cir. 2006). The factors "are not prerequisites that must be met, but are interrelated considerations that must be balanced together." Shelby Cty. Advocates for Valid Elections v. Hargett, 348 F. Supp. 3d 764, 769 (W.D. Tenn. 2018) (internal citations omitted). Importantly, "in First Amendment cases, the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits [since] the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the state action." Graveline v. Johnson, 336 F. Supp. 3d 801, 807 (E.D. Mich. 2018) (internal citations and quotes omitted).

## III.    ARGUMENT

The Plaintiffs bring their motion for a temporary restraining order and/or a preliminary injunction pursuant to Federal Rule of Civil Procedure 65. Rule 65

5

provides that "the court may issue a temporary restraining order without written or oral notice to the adverse party."

### A.   The Plaintiffs are likely to succeed on the merits.

Pursuant to Michigan election law, to appear on the official general ballot in November, sponsors of ballot initiatives are required to file with the Michigan Secretary of State's office by May 27, 2020, at least three-hundred forty thousand and forty-seven (340,047) signatures of qualified and registered electors residing in the state of Michigan. M.C.L. § 168.471 (the "Ballot Initiative Access Statute").

The enforcement of the Ballot Initiative Access Statute during this national time of crisis and in light of Governor Whitmer's Stay-home Order is unconstitutional. Ballot access laws "place burdens on two different, although overlapping, kinds of rights – the right of individuals to associate for the advancement of their political beliefs, and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively. Both of these rights, of course, rank among our most precious freedoms." Williams v. Rhodes, 393 U.S. 23, 30, 89 S. Ct. 5, 10 (1968). Indeed, "other rights, even the most basic, are illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U.S. 1, 84 S. Ct. 526, 535 (1964). Thus, "when a state promulgates a regulation which imposes a 'severe' burden on individuals' rights, that regulation will only be upheld if it is narrowly drawn to advance a state interest of compelling importance." Lawrence v. Blackwell, 430 F.3d 368, 373 (6th Cir. 2005).

Here, although they are no longer doing the same for candidates, Defendants' insist on enforcing both the signature requirements and filing deadline prescribed by the Ballot Initiative Access Statute. At the same time, however, Defendants have stripped proponents of ballot initiatives of the ability to meet these requirements because the Stay-home Order prohibits Michigan electors from leaving their homes for

non-essential purposes like signature gathering. That Order further requires the Plaintiffs and all Michigan's citizens to maintain a distance of six feet from all other individuals, which effectively eliminates any possibility of electors to provide their signatures without themselves having violated the Order.

Taken together, the Ballot Initiative Access Statute and the Stay-home Order impose burdens so severe that they "function as an absolute bar" to SawariMedia getting their initiative on the November 2020 general ballot. Graveline, 336 F.Supp.3d at 809. There are no alternative means for SawariMedia and its supporters to get the initiative on the ballot, and voters, including the Plaintiffs and their supporters, have no alternative means to exercise their vote effectively on a political issue they wish to vote on.

The Defendants' enforcement of these provisions serves only to "freeze the status quo," and to deny the electors of Michigan the ability to make their voices heard on a political issue they wish to effectuate change. Id. at 811. Defendants cannot reasonably justify these actions under the circumstances.

Because the combined application of the Ballot Initiative Access Statute and the Stay-home Order severely burden the Plaintiff's rights as both the sponsor of the initiative, and registered voters, Defendants "must set forth precise interests of compelling importance and show that the regulations are necessary and narrowly tailored to advance those interests." Id. at 813. This, Defendants cannot do. There is no compelling or legitimate state interest for Defendants' refusal to apply this Court's April 20, 2020, decision in Esshaki v, Whitmer, et al., to ballot initiatives petitons, or for insisting on enforcing the Ballot Initiative Access Statute, and Defendants have within their means the ability to suspend or postpone the Filing Deadline, and/or lower the signature requirements, as they have recently done for candidates petitions.

### B.    Plaintiffs will suffer immediate and irreparable harm in the absence of relief.

An injury is irreparable if it is not fully compensable in monetary terms. See, e.g., Uniroyal Goodrich Tire Co. v. Hudson, 856 F. Supp. 348, 356 (E.D. Mich. 1994). It is well-settled that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitute irreparable injury." Elrod v. Burns, 427 U.S. 347, 373-74 (1976). "Restrictions on access to the ballot impinge on the fundamental right to associate for the advancement of political beliefs and the fundamental right to vote." Id.

By preventing the Plaintiffs access to the ballot, the Ballot Initiative Access Statute in combination with the Stay-home Order "places burdens on two different, although overlapping, kinds or rights - the right of individuals to associate for the advancement of political beliefs and the right of qualified voters, regardless of their political persuasion, to cast their votes effectively." Williams v. Rhodes, 393 U.S. 23, 30, 90 S. Ct. 5 (1968). Absent relief from this Court, or other extraordinary measures and great expense, SawariMedia's initiative will not be placed on the ballot. This will deprive the Plaintiffs and their supporters of an effective choice and is burdensome, unreasonable, and is not narrowly tailored to meet any compelling or legitimate state interest.

### C.    The balance of equities tips in the Plaintiffs' favor.

"There are few greater burdens that can be placed on a political [advocacy coalition] than being denied access to the ballot." Libertarian Party of Ohio, v. Blackwell, 462 F.3d 579, 593 (6th Cir. 2006) (internal citations omitted).

Defendants' refusal to apply this Court's previous ruling in Esshaki v. Whitmer et al., and enforcement of the Ballot Initiative Access Statute, in combination with the Stay-home Order, effectively robs SawariMedia, and those thousands of qualified,

registered electors who support the initiative, of the opportunity to gain access to the ballot. Given the magnitude of this burden, Defendants are left searching in vain to surmise a state interest of compelling enough importance to continue to enforce the Ballot Initiative Access Statute in comparison to the burdens they impose on the Plaintiffs. This is especially true in light of this Court's April 20, 2020, Order in Esshaki v. Whitmer, et al., and the extraordinary measures Defendants' implemented to combat this global pandemic and their willingness to alter existing law to accommodate the local May election and canvassing deadline.

### D.   An injunction is in the public interest

Enforcement of the Ballot Initiative Access Statute in combination with the Stay-home Order severely limits the choices available to voters. The Supreme Court has noted that "by limiting the choices available to voters, the State impairs the voters' ability to express their political preferences." Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184, 99 S. Ct. 983, 990 (1979). Ensuring SawariMedia's initiative is on the ballot expands the choices available to voters and is thus in the public interest.

When such rights are at stake, a State must establish that the enforcement of its Ballot Initiative Access laws are necessary to serve a compelling interest. See id. Here, Defendants are enforcing an unconstitutional law, which cannot serve as the basis for a compelling interest of the state. See, e.g., ACLU v Ashcroft, 322 F.3d 240, 251 n.11 (3d Cir. 2003) ("Neither the Government nor the public generally can claim an interest in the enforcement of an unconstitutional law").

### IV.   CONCLUSION

**WHEREFORE,** Plaintiffs respectfully requests that this Court enter a temporary restraining order and/or a preliminary injunction against Defendants restraining

them from enforcing the Ballot Initiative Access Statute and such other equitable relief as the Court deems appropriate.

Respectfully Submitted,

SAWARIMEDIA LLC

By: _____

Amani Sawari
Plaintiff, In pro per
P.O. Box 2278
Detroit, MI 48202
248-795-0886
amanisawari@gmail.com

Dated: May 4, 2020

_____
Deborah Parker
Plaintiff, In pro per
21908 Gaukler St.
St. Clair Shores, MI 48080
313-550-2081
alinosi@yahoo.com

_____
Judy Kellogg
Plaintiff, In pro per
2450 Krouse Rd.
Lot #337
Owosso, MI 48867
989-277-3228
judykellogg95@gmail.com

_____
Paul Ely
Plaintiff, In pro per
12646 North Red Bud
Buchanan, MI 49107
269-635-1611
tlc.greenyard@yahoo.com

## CERTIFICATE OF SERVICE

THE UNDERSIGNED certifies that on the 4th day of May, 2020, the foregoing paper was filed with the Clerk of the Court by placing the same in an envelope with enough pre-paid first class postage to be delivered to Clerk of the Court, United States District Court, Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit, MI 48202, and by placing that envelope in a US postal service collection box in Detroit, Michigan.

_____

Amani Sawari

## TABLE OF EXHIBITS

Declaration of Amani Sawari, Deborah Parker,
Judy Kellogg and Paul Ely                                    Exhibit A

Stay Home Order                                              Exhibit B

Secretary of State Website                                   Exhibit C

Photos of mailing campaign and printed petitions             Exhibit D

# EXHIBIT A

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SAWARIMEDIA LLC, DEBORAH PARKER, JUDY KELLOGG, and PAUL ELY, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) ) | |
| GRETCHEN WHITMER, Governor of Michigan, JOCELYN BENSON, Secretay of State of Michigan, and JONATHAN BRATER, Director of the Michigan Bureau of Elections, in their official capacities, | ) ) ) ) ) ) ) | Hon. |
| Defendants. | ) ) | |

## DECLARATION OF AMANI SAWARI

1.   I am the owner and manager of SawariMedia LLC.

2.   SawariMedia is a coalition of like-minded individuals who work together to educate and promote their political views in the public arena.

3.   On January 16, 2020, on behalf of SawariMedia, and the thousands of supporters of SawariMedia, I filed a ballot initiative petition with the Michigan Secretary of State to begin collecting signatures to qualify for the placement of the initiative on the November 3, 2020, general election ballot.

4.   I hired campaign staff and have been diligently campaigning since the summer of 2019. I have purchased a website devoted to the initiative, hosted several town-hall meetings revolving around the initiative, conducted multiple training sessions across the state for the canvassers of the petition, and purchased more than thirty-four thousand (34,000) copies of the petition.

1

5.  Pursuant to Michigan election law, to appear on the November 3, 2020, general ballot, I, as the sponsor of the initiative, am required to file with the Michigan Secretary of State's office by May 27, 2020, three-hundred forty thousand and forty-seven (340,047) qualified and registered electors who reside in the state of Michigan. M.C.L. § 168.471.

6.  My campaign team and I implemented a plan to collect the number of signatures early on in the campaign.

7.  My campaign team and I, along with many volunteers and supporters have been working diligently, and we have already collected approximately two-hundred fifteen thousand (215,000) valid signatures.

8.  Collecting signatures is a time-consuming process, which requires close contact with electors who reside in the state.

9.  On or around March 15, 2020, President Trump rolled out his "15 days to slow the spread" initiative (the "Initiative"). This Initiative, which was recently extended, asks people to practice social distancing and to take other measures to prevent the spread of the novel SARS-CoV-2 virus ("Covid-19").

10. To comply with this Initiative and to protect Michigan's citizens, my campaign team and I postponed many of our efforts to collect signatures.

11. On March 23, 2020, in response to the unprecedented Covid-19 pandemic, which has disrupted nearly every aspect of American life, Governor Whitmer issued Executive Order 2020-21 (the "Stay-home Order" or the "Order"). The Order went into effect on March 24, 2020, and was recently extended to at least May 15, 2020.

12. Based on information and belief, the Order will likely be extended beyond the May 27 deadline, but more importantly, the social distancing guidelines will likely be in effect throughout the summer, and possibly

into the winter.

13. Whitmer's Stay-home Order is to be construed broadly. The Order makes it a criminal and/or civil infraction for a person to leave their home unless that person is a worker "necessary to sustain or protect life or to conduct minimum basic operations" ("Essential Worker").

14. The Stay-home Order further requires that Essential Workers who leave their homes must maintain social distancing standards by remaining at least six feet away from others.

15. The Stay-home Order does not create an exception for the sponsor of a ballot initiative, or those who are working to collect signatures for a ballot initiative.

16. On or around March 24, 2020, staff from the Michigan Secretary of State informed a member of my staff that there would be no changes to the existing deadline and/or signature requirement.

17. On April 15, 2020, another member of my campaign staff received an email from the Bureau of Elections that stated "As of now nothing has changed. Updates will be posted on our website as www.Michigan.gov/Elections." The email came from elections@michigan.gov

18. The Defendants' enforcement of the deadline and signature requirement is inconsistent with the decision issued on April 20, 2020, by the Federal District Court, in the case of Esshaki v. Whitmer et al. It is also inconsistent with other actions take by the Secretary of State including the closing of their offices until the Governor's Stay-home Order expires, or is repealed. The Secretary of State has also indicated that it will conduct local elections in May 2020 through mail ballots, and not in person. Further, Governor Whitmer postponed the canvassing elections until April 24, 2020.

19. These extraordinary measures underscore the challenges we face as a state and a nation during this pandemic.

20. Governor Whitmer's Stay-home Order has made it impossible for ballot initiative sponsors like me to obtain the required number of elector signatures by May 27, 2020, the deadline imposed under M.C.L. § 168.471.

21. The enforcement of that deadline under these unprecedented circumstances, considering the Stay-home Order, is unconstitutional because it requires me to obtain signatures by May 27, 2020, and simultaneously strips me of the ability to meet those requirments.

22. This effectively prevents me, through no fault of my own, from getting our initiative on the ballot, and providing the Michigan electors with a meaningful choice related to a political topic hundreds of thousands of qualified, registered electors, have already shown their support for.

23. Over the last several months, I have expended countless hours and other resources campaigning. The enforcement of the Deadline severely injures me and, continues to impose severe burdens on me because if it is enforced, I will not be able to provide the electors of this state with a chance to vote on an issue hundreds of thousands have already shown they wish to vote on. I will also have lost a substantial amount of time and money. I have already spent a substantial amount of money mailing the petitions to electors who have requested it, but the US Postal Service is running several weeks behind on the processing of mail in Michigan.

24. The initiative's supporters and I will be further injured and will suffer irreparable harm to our voting, speech, and associational rights because our initiative will not be on the ballot, and we will not be able to make our voices heard on an issue we wish to bring about change.

25. Based on information and belief, there are several other coalitions in

Michigan that had previously filed ballot initiative petitions with the Secretary of State's office, who are now facing these same obstacles.

26.  I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 4th day of May 2020 by:

_____

Amani Sawari

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAWARIMEDIA LLC, DEBORAH PARKER, )
JUDY KELLOGG, and PAUL ELY, )
 )
   Plaintiffs, )  Civil Action No.
 )
   v. )
 )
GRETCHEN WHITMER, Governor of )  Hon.
Michigan, JOCELYN BENSON, Secretay )
of State of Michigan, and JONATHAN )
BRATER, Director of the Michigan )
Bureau of Elections, in their official )
capacities, )
 )
   Defendants. )

## DECLARATION OF DEBORAH PARKER

1. I am a United States citizen, and a registered voter in the state of Michigan.

2. I have routinely voted in past primary and general elections.

3. I have always been an advocate for individuals and organizations coming together to try and make positive changes in their communities.

4. In the past I have signed and supported several different ballot initiative petitions that I believed would have a positive impact on our county and/or state.

5. Sometime in March of this year (2020), I became aware of the initiative sponsored by SawariMedia LLC. After reading the entire petition on-line, I decided that I wanted to show my support for the initiative by signing the petition. At that time I located one of the locations near me that was hosting the petition for people to come in and sign it. I made plans to visit the location in the next few days.

6. Prior to me being able to visit the location to sign the petition, President Trump issued the social distancing guidelines which prevented the gatherings of large groups, and recommended that we stay six feet away from other people.

7. Just a few days after that, our Governor issued the Stay-Home Stay-Safe Order that made it legally impossible for me to leave my home to sign the petition.

8. Although I have requested that a copy of the petition be mailed to me, and have been told by SawariMedia LLC that one was mailed to me several weeks ago, I have yet to receive it in the mail.

9. I have a constitutional right to sign a petition that will bring an issue to the ballot that I want to vote on, but because of the Governor's Order, I am not allowed to do so.

10. My right to peaceably assemble for political reasons, my right to the freedom of speech, and my right to make my voice heard through a ballot initiative is being violated by the Governor of Michigan.

11. I declare under the penalty of perjury that the foregoing statements are true and correct.

Executed this 4th day of May 2020 by:

Deborah Parker

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAWARIMEDIA LLC, DEBORAH PARKER,   )
JUDY KELLOGG, and PAUL ELY,        )
                                   )
            Plaintiffs,            )        Civil Action No.
                                   )
        v.                         )
                                   )        Hon.
GRETCHEN WHITMER, Governor of      )
Michigan, JOCELYN BENSON, Secretay )
of State of Michigan, and JONATHAN )
BRATER, Director of the Michigan   )
Bureau of Elections, in their official )
capacities,                        )
                                   )
            Defendants.            )

## DECLARATION OF JUDY KELLOGG

1. I am a United States citizen, and a registered voter in the state of Michigan.

2. I have routinely voted in past primary and general elections.

3. I learned about a petition being circulated by SawariMedia LLC, that I was told would directly effect me and my family. I then began researching the petition on the internet.

4. After reading through the petition, I wanted the opportunity to sign the petition to show my support, and to be able to have my signature counted toward the 340,047 signatures needed to get the issue on the November ballot.

5. Using SawariMedia's website, I located a signing event that was going to be held at the University of Michigan, and made plans to attend.

6. Before the event happened, the Coronavirus began to impact our daily lives. The president ordered social distancing, and then Governor Whitmer

issued an Executive Order making it illegal for anyone to leave their homes for anything but "essential" activities.

7. That order has prevented me from signing the petition that I want to vote on in November.

8. I, by law, have the right to sign an initiative petition that I wish to see on the state's general election ballot in November, 2020. That is how we, the voters, make our voices heard.

9. I know that candidates who were collecting signatures to get on the ballot were given special accommodations due to the current circumstances. We, the registered voters of Michigan, should be given the same accommodations.

10. I believe my First and Fourteenth Amendment rights are being violated, and I am being stopped from exercising my most fundamental rights.

11. I declare under the penalty of perjury that the foregoing statements are true and correct.

Executed this 4th day of May 2020 by:

_Judy Kellogg_
Judy Kellogg

UNITED STATES DISTRICT COURT
THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SAWARIMEDIA LLC, DEBORAH PARKER, JUDY KELLOGG, and PAUL ELY, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. |
| v. | ) ) | |
| GRETCHEN WHITMER, Governor of Michigan, JOCELYN BENSON, Secretay of State of Michigan, and JONATHAN BRATER, Director of the Michigan Bureau of Elections, in their official capacities, | ) ) ) ) ) ) ) ) | Hon. |
| Defendants. | ) ) | |

## DECLARATION OF PAUL ELY

1.  I am a United States citizen, and a registered voter in the state of Michigan.

2.  I have routinely voted in past primary and general elections.

3.  On or about March 15, 2020, a family member informed me of a petition that was being circulated to get an issue on the November ballot that she thought I would be interested in.

4.  I posed the question on FaceBook to see if anyone else knew about it, and to try and find out where I could read the petition. I was given the website to the location of the petition by several different people on social media.

5.  After reading the petition, and statistics to support it, I decided that I wanted to sign it so that I could help get it on the ballot for November, 2020.

6.  Prior to me being able to sign the petition, the President of the United

States, and the Governor of Michigan, issued new rules and regulations that have now made it impossible for me to do so.

7. Those rules and regulations have now prohibited me from being able to have my signature counted toward the goal needed to get the petition on the ballot.

8. I know many other people who are in the same situation as me. These rules and regulations are going to stop us from being able to bring an issue to the ballot that we, as voters, have the right to do.

9. I believe my First and Fourteenth Amendment rights are being violated, and I am being stopped from exercising my most fundamental rights.

11. I declare under the penalty of perjury that the foregoing statements are true and correct.

Executed this 4th day of May 2020 by:

Paul Ely

# EXHIBIT B

**THE OFFICE OF GOVERNOR GRETCHEN WHITMER**

WHITMER / NEWS / EXECUTIVE ORDERS

# Executive Order 2020-21 (COVID-19)

### EXECUTIVE ORDER

### No. 2020-21

### Temporary requirement to suspend activities that are not necessary to sustain or protect life

The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. Older adults and those with chronic health conditions are at particular risk, and there is an increased risk of rapid spread of COVID-19 among persons in close proximity to one another. There is currently no approved vaccine or antiviral treatment for this disease.

On March 10, 2020, the Michigan Department of Health and Human Services identified the first two presumptive-positive cases of COVID-19 in Michigan. On that same day, I issued Executive Order 2020-4. This order declared a state of emergency across the state of Michigan under section 1 of article 5 of the Michigan Constitution of 1963, the Emergency Management Act, 1976 PA 390, as amended, MCL 30.401-.421, and the Emergency Powers of the Governor Act of 1945, 1945 PA 302, as amended, MCL 10.31-.33.

The Emergency Management Act vests the governor with broad powers and duties to "cop[e] with dangers to this state or the people of this state presented by a disaster or emergency," which the governor may implement through "executive orders, proclamations, and directives having the force and effect of law." MCL 30.403(1)-(2). Similarly, the Emergency Powers of the Governor Act of 1945, provides that, after declaring a state of emergency, "the governor may promulgate reasonable orders, rules, and regulations as he or she considers necessary to protect life and property or to bring the emergency situation within the affected area under control." MCL 10.31(1).

To suppress the spread of COVID-19, to prevent the state's health care system from being overwhelmed, to allow time for the production of critical test kits, ventilators, and personal protective equipment, and to avoid needless deaths, it is reasonable and necessary to direct residents to remain at home or in their place of residence to the maximum extent feasible.

This order takes effect on March 24, 2020 at 12:01 am, and continues through April 13, 2020 at 11:59 pm.

Acting under the Michigan Constitution of 1963 and Michigan law, I order the following:

1. This order must be construed broadly to prohibit in-person work that is not necessary to sustain or protect life.

2. Subject to the exceptions in section 7, all individuals currently living within the State of Michigan are ordered to stay at home or at their place of residence. Subject to the same exceptions, all public and private gatherings of any number of people occurring among persons not part of a single household are prohibited.

3. All individuals who leave their home or place of residence must adhere to social distancing measures recommended by the Centers for Disease Control and Prevention, including remaining at least six feet from people from outside the individual's household to the extent feasible under the circumstances.

4. No person or entity shall operate a business or conduct operations that require workers to leave their homes or places of residence except to the extent that those workers are necessary to sustain or protect life or to conduct minimum basic operations.

    a. For purposes of this order, workers who are necessary to sustain or protect life are defined as "critical infrastructure workers," as described in sections 8 and 9.

    b. For purposes of this order, workers who are necessary to conduct minimum basic operations are those whose in-person presence is strictly necessary to allow the business or operation to maintain the value of inventory and equipment, care for animals, ensure security, process transactions (including payroll and employee benefits), or facilitate the ability of other workers to work remotely.

    Businesses and operations must determine which of their workers are necessary to conduct minimum basic operations and inform such workers of that designation. Businesses and operations must make such designations in writing, whether by electronic message, public website, or other appropriate means. Such designations, however, may be made orally until March 31, 2020 at 11:59 pm.

5. Businesses and operations that employ critical infrastructure workers may continue in-person operations, subject to the following conditions:

a. Consistent with sections 8 and 9, businesses and operations must determine which of their workers are critical infrastructure workers and inform such workers of that designation. Businesses and operations must make such designations in writing, whether by electronic message, public website, or other appropriate means. Such designations, however, may be made orally until March 31, 2020 at 11:59 pm. Businesses and operations need not designate:

　　1. Workers in health care and public health.

　　2. Workers who perform necessary government activities, as described in section 6.

　　3. Workers and volunteers described in section 9(d).

b. In-person activities that are not necessary to sustain or protect life must be suspended until normal operations resume.

c. Businesses and operations maintaining in-person activities must adopt social distancing practices and other mitigation measures to protect workers and patrons. Those practices and measures include, but are not limited to:

　　1. Restricting the number of workers present on premises to no more than is strictly necessary to perform the business's or operation's critical infrastructure functions.

　　2. Promoting remote work to the fullest extent possible.

3. Keeping workers and patrons who are on premises at least six feet from one another to the maximum extent possible, including for customers who are standing in line.

4. Increasing standards of facility cleaning and disinfection to limit worker and patron exposure to COVID-19, as well as adopting protocols to clean and disinfect in the event of a positive COVID-19 case in the workplace.

5. Adopting policies to prevent workers from entering the premises if they display respiratory symptoms or have had contact with a person who is known or suspected to have COVID-19.

6. Any other social distancing practices and mitigation measures recommended by the Centers for Disease Control.

6. All in-person government activities at whatever level (state, county, or local) that are not necessary to sustain or protect life, or to supporting those businesses and operations that are necessary to sustain or protect life, are suspended.

   a. For purposes of this order, necessary government activities include activities performed by critical infrastructure workers, including workers in law enforcement, public safety, and first responders.

   b. Such activities also include, but are not limited to, public transit, trash pick-up and disposal, activities necessary to manage and oversee elections, operations necessary to enable transactions that support the work of a business's or operation's critical infrastructure workers, and the maintenance of safe and sanitary public parks so as to allow for outdoor recreation.

    c. For purposes of this order, necessary government activities include minimum basic operations, as described in section 4(b). Workers performing such activities need not be designated.

    d. Any in-person government activities must be performed consistently with the social distancing practices and other mitigation measures to protect workers and patrons described in section 5(c).

7. Exceptions.

    a. Individuals may leave their home or place of residence, and travel as necessary:

        1. To engage in outdoor activity, including walking, hiking, running, cycling, or any other recreational activity consistent with remaining at least six feet from people from outside the individual's household.

        2. To perform their jobs as critical infrastructure workers after being so designated by their employers. (Critical infrastructure workers who need not be designated under section 5(a) may leave their home for work without a designation.)

        3. To conduct minimum basic operations, as described in section 4(b), after being designated to perform such work by their employers.

        4. To perform necessary government activities, as described in section 6.

        5. To perform tasks that are necessary to their health and safety, or to the health and safety of their family or household members (including

pets). Individuals may, for example, leave the home or place of residence to secure medication or to seek medical or dental care that is necessary to address a medical emergency or to preserve the health and safety of a household or family member (including procedures that, in accordance with a duly implemented nonessential procedures postponement plan, have not been postponed).

6. To obtain necessary services or supplies for themselves, their family or household members, and their vehicles. *Individuals must secure such services or supplies via delivery to the maximum extent possible.* As needed, however, individuals may leave the home or place of residence to purchase groceries, take-out food, gasoline, needed medical supplies, and any other products necessary to maintain the safety, sanitation, and basic operation of their residences.

7. To care for a family member or a family member's pet in another household.

8. To care for minors, dependents, the elderly, persons with disabilities, or other vulnerable persons.

9. To visit an individual under the care of a health care facility, residential care facility, or congregate care facility, to the extent otherwise permitted.

10. To attend legal proceedings or hearings for essential or emergency purposes as ordered by a court.

11. To work or volunteer for businesses or operations (including both and religious and secular nonprofit organizations) that provide food, shelter, and other necessities of life for economically disadvantaged or

otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities.

    b. Individuals may also travel:

        1. To return to a home or place of residence from outside this state.

        2. To leave this state for a home or residence elsewhere.

        3. To travel between two residences in this state.

        4. As required by law enforcement or a court order, including the transportation of children pursuant to a custody agreement.

8. For purposes of this order, critical infrastructure workers are those workers described by the Director of the U.S. Cybersecurity and Infrastructure Security Agency in his guidance of March 19, 2020 on the COVID-19 response (available **here**). Such workers include some workers in each of the following sectors:

    a. Health care and public health.

    b. Law enforcement, public safety, and first responders.

    c. Food and agriculture.

    d. Energy.

    e. Water and wastewater.

    f. Transportation and logistics.

    g. Public works.

    h. Communications and information technology, including news media.

    i. Other community-based government operations and essential functions.

    j. Critical manufacturing.

    k. Hazardous materials.

    l. Financial services.

    m. Chemical supply chains and safety.

    n. Defense industrial base.

9. For purposes of this order, critical infrastructure workers also include:

    a. Child care workers (including workers at disaster relief child care centers), but only to the extent necessary to serve the children or dependents of critical infrastructure workers as defined in this order. This category

includes individuals (whether licensed or not) who have arranged to care for the children or dependents of critical infrastructure workers.

b. Workers at designated suppliers and distribution centers, as described below.

1. A business or operation that employs critical infrastructure workers may designate suppliers, distribution centers, or service providers whose continued operation is necessary to enable, support, or facilitate the work of its critical infrastructure workers.

2. Such suppliers, distribution centers, or service providers may designate workers as critical infrastructure workers *only* to the extent those workers are necessary to enable, support, or facilitate the work of the original operation's or business's critical infrastructure workers.

3. Designated suppliers, distribution centers, and service providers may in turn designate additional suppliers, distribution centers, and service providers whose continued operation is necessary to enable, support, or facilitate the work of their critical infrastructure workers.

4. Such additional suppliers, distribution centers, and service providers may designate workers as critical infrastructure workers *only* to the extent that those workers are necessary to enable, support, or facilitate the work of the critical infrastructure workers at the supplier, distribution center, or service provider that has designated them.

5. Businesses, operations, suppliers, distribution centers, and service providers must make all designations in writing to the entities they are designating, whether by electronic message, public website, or other

appropriate means. Such designations may be made orally until March 31, 2020 at 11:59 pm.

6. Businesses, operations, suppliers, distribution centers, and service providers that abuse their designation authority shall be subject to sanctions to the fullest extent of the law.

c. Workers in the insurance industry, but only to the extent that their work cannot be done by telephone or remotely.

d. Workers and volunteers for businesses or operations (including both and religious and secular nonprofit organizations) that provide food, shelter, and other necessities of life for economically disadvantaged or otherwise needy individuals, individuals who need assistance as a result of this emergency, and people with disabilities.

e. Workers who perform critical labor union functions, including those who administer health and welfare funds and those who monitor the well-being and safety of union members who are critical infrastructure workers, provided that any administration or monitoring should be done by telephone or remotely where possible.

10. Nothing in this order should be taken to supersede another executive order or directive that is in effect, except to the extent this order imposes more stringent limitations on in-person work, activities, and interactions. Consistent with prior guidance, a place of religious worship, when used for religious worship, is not subject to penalty under section 14.

11. Nothing in this order should be taken to interfere with or infringe on the powers of the legislative and judicial branches to perform their constitutional duties or exercise their authority.

12. This order takes effect on March 24, 2020 at 12:01 am, and continues through April 13, 2020 at 11:59 pm.

13. The governor will evaluate the continuing need for this order prior to its expiration. In determining whether to maintain, intensify, or relax its restrictions, she will consider, among other things, (1) data on COVID-19 infections and the disease's rate of spread; (2) whether sufficient medical personnel, hospital beds, and ventilators exist to meet anticipated medical need; (3) the availability of personal protective equipment for the health-care workforce; (4) the state's capacity to test for COVID-19 cases and isolate infected people; and (5) economic conditions in the state.

14. Consistent with MCL 10.33 and MCL 30.405(3), a willful violation of this order is a misdemeanor.

Given under my hand and the Great Seal of the State of Michigan.

## RELATED CONTENT

Executive Order 2020-69 (COVID-19)

Executive Order 2020-70 (COVID-19)

Executive Order 2020-65 (COVID-19)

Executive Order 2020-64 (COVID-19)

Executive Order 2020-67 (COVID-19)

Executive Order 2020-68 (COVID-19)

Executive Order 2020-66 (COVID-19)

Executive Order 2020-61 (COVID-19)

Executive Order 2020-62 (COVID-19)

Executive Order 2020-63 (COVID-19)

Executive Order 2020-60 (COVID-19)

Executive Order 2020-59 (COVID-19)

Executive Order 2020-58 (COVID-19)

Executive Order 2020-57 (COVID-19)

Executive Order 2020-56 (COVID-19)

Executive Order 2020-55 (COVID-19)

Executive Order 2020-54 (COVID-19)

Executive Order 2020-53 (COVID-19)

Executive Order 2020-52 (COVID-19)

Executive Order 2020-51 (COVID-19)



MICHIGAN.GOV HOME
ADA
MICHIGAN NEWS
POLICIES

COPYRIGHT 2020 STATE OF MICHIGAN

# EXHIBIT C

SOS - When will Secretary of State offices reopen?                                    Page 1 of 1

OFFICIAL WEBSITE OF MICHIGAN.GOV

**The Office of**
# Secretary of State Jocelyn Benson                            ≡
SOS

# When will Secretary of State offices reopen?

All Secretary of State offices will be closed through the duration of Governor Whitmer's **Stay Home, Stay Safe Executive Order.** Secretary Benson and her administration will continue to work with Governor Whitmer's administration to monitor public health across the state in order to determine when we can reopen branch offices.

Last updated: April 30, 2020



**SOS Home**                              **MICHIGAN.GOV HOME**
**FAQ**                                   **ADA**
**Online Services**                       **MICHIGAN NEWS**
**Forms**                                 **POLICIES**
**Contact the Secretary of State**
**FOIA**

**COPYRIGHT 2020 STATE OF MICHIGAN**

# EXHIBIT D





