UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAWARIMEDIA LLC, *et al.*,

      Plaintiffs,                            Case No. 20-cv-11246
                                          Hon. Matthew F. Leitman

v.

GRETCHEN WHITMER*, et al.*,

      Defendants.

_____/

## ORDER DENYING DEFENDANTS' EMERGENCY MOTION FOR A STAY PENDING EMERGENCY APPEAL (ECF No. 30)

      Plaintiff SawariMedia LLC is a civil-rights organization that seeks to place an initiative on Michigan's 2020 general election ballot.  On June 11, 2020, this Court enjoined Defendants from keeping SawariMedia's proposed initiative off the ballot based on SawariMedia's inability to collect the required 340,047 signatures by the May 27, 2020, filing deadline. (*See* Op. and Order, ECF No. 17.)  Defendants have now moved for an emergency stay of the Court's preliminary injunction while they pursue an emergency appeal. (*See* Mot., ECF No. 30.)  Defendants filed their emergency motion for a stay on the evening of June 23, 2020, and they asked the Court to rule on that motion by no later than 5:00 p.m. the next day, June 24, 2020. (*See id.*, PageID.358.)  Given the press of time, the Court's discussion and analysis below is necessarily truncated.  The Court included a full recitation and analysis of

1

the background facts and controlling law in its Opinion and Order granting injunctive relief. (*See* Op. and Order, ECF No. 17, PageID.222-231.)  The Court encourages the reader to begin with that ruling.

For the reasons that follow, Defendants' motion for an emergency stay is **DENIED**.

**I**

**A**

SawariMedia "is a coalition of like-minded individuals who work together to educate and promote their political views in the public arena." (Decl. of Amani Sawari, owner and manager of SawariMedia, at ¶2, ECF No. 2, PageID.66.)  In the "summer of 2019," SawariMedia media began planning to place an initiative on Michigan's 2020 general election ballot. (*Id.* at ¶4, PageID.66.)  That initiative seeks "to allow all [Michigan] prisoners regardless of the date on which they were sentenced, the right to earn time off their sentences by incentivizing good behavior, academic and professional achievement." *See* http://mprca.info/petition.

Under Michigan law, in order to place the initiative on the 2020 general election ballot, SawariMedia needed to submit "petitions signed by a number of registered electors, not less than eight percent … of the total vote cast for all candidates for governor at the last preceding general election at which a governor was elected." Mich. Const., 1963, art. 2, § 9.  A total of 4,250,585 votes were cast

2

in Michigan's last general election for Governor.[1]   Thus, SawariMedia needed to collect 340,047 valid signatures in order to secure a spot for its initiative proposal on Michigan's 2020 general election ballot.   Under Michigan law, the petitions containing those signatures had to be filed with the Michigan Secretary of State by not later than May 27, 2020. *See* Mich. Comp. Laws § 168.471 (requiring the filing of initiative petitions with the Secretary of State "at least 160 days before the election at which the proposed law would appear on the ballot").

Once signed petitions are filed with the Secretary of State, the Board of State Canvassers "shall canvass the petitions to ascertain if the petitions have been signed by the requisite number of qualified and registered [voters]." Mich. Comp. Laws § 168.476.   The canvassing process also allows interested parties to challenge a determination made about a signature's validity.   The Board of State Canvassers must complete their canvass and "shall make an official declaration of the sufficiency or insufficiency of an initiative petition no later than 100 days before the election at which the proposal is to be submitted." Mich. Comp. Laws § 168.477(1). If the Board of State Canvassers declares that an initiative petition has sufficient signatures, the Michigan Legislature then has "40 session days" to either "enact[]" the proposal "without change or amendment" or reject the proposal. Mich. Const., 1963, art. 2, § 9.  "If the Legislature does not enact the proposal within 40 session

---

[1] *See* https://mielections.us/election/results/2018GEN_CENR.html.

days, the Board of State Canvassers must prepare the proposal for the ballot."
(Declaration of Defendant Jonathan Brater, Michigan Director of Elections, at ¶11,
ECF No. 7-2, PageID.151-152, citing Mich. Comp. Laws §§ 168.474a, 168.480.)

By early March, SawariMedia appeared to be well on its way to collecting a
sufficient number of signatures to place its initiative on the November 2020 general
election ballot.  At that time, it had "collected approximately two-hundred fifteen
thousand (215,000) valid signatures" in support of the initiative – an average of over
22,000 per week. (Sawari Decl. at ¶¶ 3, 7, ECF No. 2, PageID.66-67.)  But then, on
March 10, 2020, the Michigan Department of Health and Human Services identified
the first two presumptive-positive cases of the COVID-19 coronavirus in Michigan.[2]
Governor Whitmer declared a "State of Emergency" that same day. The State of
Emergency executive order recognized that COVID-19 "can easily spread from
person to person" and could "result in serious illness or death."[3]  Three days later,
on March 13, 2020, Governor Whitmer closed Michigan's schools and prohibited

---

[2] *See* Gov. Whitmer Executive Order 2020-04, Declaration of State of Emergency,
https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521576--,00.html.
[3] *Id.*

gatherings of more than 250 people.[4]  On March 16, 2020, Governor Whitmer closed various places of public accommodation, such as restaurants, bars, and gyms.[5]

On March 23, 2020, Governor Whitmer issued what has become known as the "Stay-at-Home Order."[6]  The Stay-at-Home Order, subject to very limited exceptions, required "all individuals currently living within the State of Michigan … to stay at home or at their place of residence. Subject to the same exceptions, all public and private gatherings of any number of people occurring among persons not part of a single household [were also] prohibited."[7]  The Stay-at-Home Order also provided that "[c]onsistent with [Mich. Comp. Laws §] 10.33 and [Mich. Comp. Laws §] 30.405(3), a willful violation of th[e] order [was] a misdemeanor."[8]  Governor Whitmer subsequently issued several additional executive orders extending the Stay-at-Home Order beyond the May 27, 2020, filing deadline for ballot initiative petitions.

---

[4] *See* Gov. Whitmer Executive Order 2020-5, Temporary Prohibition on Large Assemblages and Events, Temporary School Closures, https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-521595--,00.html.

[5] *See* Gov. Whitmer Executive Order 2020-9, Temporary Restrictions on the Use of Places of Public Accommodation, https://www.michigan.gov/whitmer/0,9309,7A-387-90499_90705-521789--,00.html.

[6] *See* Gov. Whitmer Executive Order 2020-21, Temporary Requirement to Suspend Activities That Are Not Necessary to Sustain or Protect Life, https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-522626--,00.html.

[7] *Id.*

[8] *Id.*

**B**

SawariMedia insists that Governor Whitmer's executive orders, and the enforcement of those orders, "made it impossible" to collect the required number of signatures by the May 27, 2020, filing deadline. (Sawari Decl. at ¶20, ECF No. 2, PageID.69.)   Thus, on May 4, 2020, SawariMedia and three would-be petition signers filed this action against Governor Whitmer, Michigan Secretary of State Jocelyn Benson, and Michigan's Director of Elections Jonathan Brater.[9] (*See* Compl., ECF No. 1.)   Plaintiffs allege that Defendants' strict enforcement of the May 27, 2020, filing deadline and the requirement that SawariMedia collect 340,047 signatures under the present circumstances violates their First and Fourteenth Amendment rights. (*See id*. at ¶¶ 49-60, PageID.10-11.)   Plaintiffs also moved for a temporary restraining order and/or preliminary injunction. (*See* Mot., ECF No. 2.)

The Court held a hearing on Plaintiffs' injunction motion on June 5, 2020, and it granted the motion in a written Opinion and Order on June 11, 2020. (*See* Op. and Order, ECF No. 17.)   In that Opinion and Order, the Court explained that Sixth Circuit precedent "dictates" that this Court review Plaintiffs' First Amendment challenges to Michigan's signature requirement and filing deadline for ballot

---

[9] As explained in the Court's Opinion and Order, due to a delay in filing *pro se* documents as a result of the COVID-19 pandemic, Plaintiffs' Complaint was not posted to the Court's docket until May 20, 2020.

initiatives "under the *Anderson-Burdick* framework."[10] *Thompson v. DeWine*, --- F.3d ---, 2020 WL 2702483, at *2 (6th Cir. May 26, 2020).  Under *Anderson-Burdick*, a court first determines "the burden [that] the State's regulation imposes on the plaintiffs' First Amendment rights." *Id.*  Then, if that burden is "severe," a court reviews the regulation under strict scrutiny to determine if it is "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434.

In this case, the Court held that "Michigan's signature requirement and filing deadline for ballot initiative petitions, in combination with Governor Whitmer's Stay-at-Home Order, severely burdened Plaintiffs' constitutional right to the ballot." (Op. and Order, ECF No. 17, PageID.247.)  The Court relied heavily on the decision in *Esshaki v. Whitmer*, --- F. Supp. 3d ---, 2020 WL 1910154 (E.D. Mich. Apr. 20, 2020).  In *Esshaki*, another Judge of this Court held that Michigan's filing deadline and signature requirement for nominating petitions for the United States House of Representatives in combination with Governor Whitmer's Stay-At-Home Orders severely burdened the constitutional rights of candidates seeking to qualify for Michigan's primary ballot. *See id.*  The Sixth Circuit affirmed that portion of the court's ruling. *See Esshaki v. Whitmer,* --- F. App'x ---, 2020 WL 2185553 (6th Cir. May 5, 2020).  Echoing *Esshaki*, this Court explained:

---

[10] *See Anderson v. Celebrezze*, 460 U.S. 780 (1983); *Burdick v. Takushi*, 504 U.S. 428 (1992).

> Like the plaintiff in *Esshaki*, the Plaintiffs here faced a
> daunting signature requirement with a firm deadline in the
> midst of the COVID-19 pandemic. And from March 23,
> 2020, through May 7, 2020, the Plaintiffs in this action
> were subject to the exact same Stay-at-Home Order (and
> the extensions of that order) as the plaintiff in *Esshaki* –
> an order that prohibited Michiganders from leaving their
> homes except in very limited circumstances. Then, from
> May 7 through May 27, 2020 (the petition submission
> deadline), the Plaintiffs here were subject to three
> additional executive orders that continued to require
> Michigan residents to stay in their homes and avoid all
> public and private gatherings except as expressly
> authorized. Just as in *Esshaki*, the State "pulled the rug out
> from under the ability [of Plaintiffs] to collect signatures"
> and "[a]bsent relief, [Plaintiffs'] lack of a viable,
> alternative means to procure the signatures [they] need[]
> means that [they] face virtual exclusion from the ballot."
> *Esshaki*, 2020 WL 1910154, at *6. Thus, as in *Esshaki*,
> this burden on Plaintiffs' First Amendment rights is
> severe.

(Op. and Order, ECF No. 17, PageID.238.)   The Court then recognized that the

Defendants had compelling interests in enforcing the signature requirement and

filing deadline. (*See id.*, PageID.247.)   However, the Court concluded that, as in

*Esshaki*, "under the current circumstances and as applied to Plaintiffs," the signature

requirement and filing deadline were not narrowly tailored. (*Id.*)  The Court therefore

"enjoined [Defendants] from excluding Plaintiffs' ballot initiative from the 2020

general election ballot on the basis that Plaintiffs did not collect 340,047 valid

signatures by the May 27, 2020, filing deadline." (*Id.*, PageID.255.)   It then

instructed Defendants to "select [their] own adjustments so as to reduce the burden

on ballot access" and "narrow the restrictions" on Plaintiffs in order to "render the application of the [signature requirement and filing deadline] constitutional under the circumstances." (*Id.*, PageID.256, quoting *Esshaki*, 2020 WL 2185553, at *2.)

## C

Defendants filed a notice of proposed remedy on June 18, 2020. (*See* Notice, ECF No. 23.)  In that proposed remedy, Defendants presented Plaintiffs with two possible options:

- Defendants would agree to extend the deadline for Plaintiffs to collect and file 340,047 valid signatures in order to appear on the 2020 general election ballot until July 6, 2020; or

- Defendants would agree to toll the time period by which signatures that Plaintiffs had collected to date would expire by 79 days, thereby allowing Plaintiffs an opportunity to qualify for the 2022 ballot without having to start their signature gathering over from square one.

The Court held an on-the-record telephonic status conference to discuss the proposed remedy on June 22, 2020, and it rejected both suggested options. (*See* 6/22/2020 Status Conf. Tr., ECF No. 28; Order Rejecting Proposed Remedy, ECF No. 25.)  The Court rejected both aspects of the proposed remedy for the reasons explained below.

Defendants have now appealed both (1) the Court's Opinion and Order granting Plaintiffs a preliminary injunction and (2) the Court's rejection of their proposed remedy. (*See* Notice of Appeal, ECF No. 26.)  They have also filed an emergency motion for a stay pending appeal in this Court. (*See* Mot., ECF No. 30.)

## II

"A stay is an intrusion into the ordinary processes of administration and judicial review." *Dodds v. United States Dep't of Education*, 845. F.3d 217, 220 (6th Cir. 2016) (quoting *Nken v. Holder*, 556 U.S. 418, 425 (2009)).  "To determine whether to stay the grant of a preliminary injunction, [courts] balance four factors: the movant's likelihood of success on appeal; whether irreparable injury to the movant will result in the absence of a stay; prospective harm to others if a stay is granted; and the public's interest in granting a stay." *Id.*  These are the "the same factors considered in determining whether to issue a TRO or preliminary injunction." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

## III

### A

The Court begins with whether Defendants are likely to succeed on either aspect of their appeal.  They are not.

As an initial matter, Defendants have not shown that they are likely to prevail on their appeal of the preliminary injunction.  In the Court's Opinion and Order

granting the injunction, the Court explained at length why the burden on Plaintiffs'
constitutional rights was severe, why the applicable provisions of Michigan law were
not narrowly tailored under these circumstances, and why the remaining factors
favored a grant of injunctive relief.  In Defendants' motion for a stay, they offer very
little argument about, or analysis of, the Court's reasoning and conclusions.  Instead,
they rely on the arguments they presented in opposition to Plaintiffs' motion seeking
entry of the injunction.  The Court rejected those arguments for the reasons stated in
its Opinion and Order, and the Defendants have not shown any error in the Court's
analysis.  Thus, Defendants have not demonstrated that they are likely to succeed in
their appeal of the preliminary injunction.

Next, for two reasons, the Defendants have not shown that they are likely to
prevail on their appeal of the Court's rejection of their proposed remedy.  First, the
Defendants have not cast serious doubt on the Court's conclusion that the proposed
remedy fails to eliminate the severe burden on Plaintiffs' constitutional rights.
Simply put, the proposed remedy does not provide Plaintiffs a meaningful or
reasonable opportunity to place their initiative on the 2020 general election ballot.
The proposed remedy gives Plaintiffs only 25 days – not 40 days as Defendants
contend[11] – to gather 125,000 signatures.   And during those 25 days, all

---

[11] As described above, the proposed remedy extends the deadline for Plaintiffs to
collect and file 340,047 valid signatures until July 6, 2020.  As Defendants
accurately note, there are 40 days between the previous filing deadline (May 27,

Michiganders are subject to continuing restrictions by Governor Whitmer that will substantially inhibit Plaintiffs' ability to collect signatures. For instance, while Governor Whitmer has now rescinded the Stay-at-Home Order, the executive orders that remain in place still prohibit indoor gatherings of more than 50 people and outdoor gatherings of more than 250 people.[12] Such gatherings are the prime locations where petition seekers ordinarily gather signatures. The current orders also restrict the capacity of retail establishments, arcades, bowling alleys, public swimming pools, concert spaces, race tracks, sports arenas, and other public

---

2020) and July 6, 2020. But 15 of those days (May 27 – June 11) were *after* the original filing deadline and *before* the Court issued its preliminary injunction. During those 15 days, it would not have been reasonable for Plaintiffs to have been collecting signatures. The Defendants had informed Plaintiffs that they (Defendants) would *not* accept for filing any signatures collected after May 27, 2020, and the Court had yet to issue its injunction. Thus, it would have been entirely reasonable for Plaintiffs to refrain from collecting signatures during the 15-day "dead period" between the original filing deadline (May 27) and the entry of the Court's injunction (June 11). Indeed, it would have made no sense for them to spend time and money collecting signatures that the Defendants said they would not accept. At an absolute minimum, Defendants should not be heard to complain here that Plaintiffs should have been collecting signatures between May 27 and June 11 when the Defendants told Plaintiffs prior to that time that Defendants would not accept such signatures. For all of these reasons, the 15 days between May 27 and June 11 should not reasonably be counted when calculating the true length of the deadline extension proposed by Defendants.

[12] *See* Gov. Whitmer Executive Order 2020-115, Temporary restrictions on certain events, gatherings, and businesses, https://www.michigan.gov/whitmer/0,9309,7-387-90499_90705-531127--,00.html.

spaces.[13]  And the orders further provide that "[w]ork that can be performed remotely (i.e., without the worker leaving his or her home or place of residence) should be performed remotely."[14]  These orders, taken together, substantially limit the number of people who would ordinarily be in public for recreational and/or employment purposes, and they thus create a significant barrier to signature collection. Defendants' suggestions that Plaintiffs should be able to collect signatures at the same pace as before the pandemic ignores that these myriad restrictions were not in place in January and February when Plaintiffs were previously gathering signatures. For all of these reasons, Defendants' proposed modest extension of the signature filing deadline does not give Plaintiffs a reasonable opportunity to qualify their proposal for the ballot and does not eliminate the severe burden on Plaintiffs' constitutional rights.

Second, Defendants have not shown error in the Court's conclusion that their proposed remedy is not narrowly tailored under the circumstances.  For example, Defendants have not sufficiently demonstrated that they are unable to extend the signature filing deadline beyond July 6, 2020.  Defendants say that they cannot extend the deadline beyond that date because there are a number of other steps that

---

[13] *See id.  See also* Gov. Whitmer Executive Order 2020-114, Safeguards to protect Michigan's workers from COVID-19, https://www.michigan.gov/whitmer/0,9309, 7-387-90499_90705-531123--,00.html.

[14] *Id.*

must take place between the time the initiative petitions are submitted and when ballots need to be printed for the November general election.  But Defendants have a number of possible options that would permit them to extend the petition submission deadline and still print the ballots on schedule.  Defendants could start canvassing Plaintiffs' currently collected 215,000 signatures now, and allow challenges to those signatures now, instead of waiting to canvass the signatures all at once after a newly imposed filing deadline.  If the Defendants took that route, then after the new filing deadline (1) the Board of State Canvassers would have far fewer petitions to review and (2) fewer challenges to signatures would need to be adjudicated.  Since there would be less work to do after the deadline, the deadline could be further extended.  In addition, the amount of time that the Michigan Legislature has to consider Plaintiffs' ballot initiative could be reduced below the currently scheduled 40 session days.  As the Court explained in the Opinion and Order, the Michigan Legislature, during this pandemic, has introduced, considered, and voted on bills in far less than 40 session days. (*See* Op. and Order, ECF No. 17, PageID.248 n.20.)  Finally, Defendants could reduce the signature requirement to a meaningful number that still ensures that a ballot proposal has a modicum of public support.  Indeed, the district court in *Esshaki* concluded that a remedy that, among other things, reduced the signature requirement required for candidates to appear on the 2020 primary ballot, would be narrowly tailored. *See Esshaki*, 2020 WL

1910154, at *11.  The Defendants agreed to reduce the signature requirement in *Esshaki*, and they may wish to do the same here.[15] (*See Esshaki*, E.D. Mich. Case No. 20-cv-10831, at ECF No. 38.)

Finally, the aspect of Defendants' proposed remedy giving Plaintiffs a potential route to place their proposal on the 2022 ballot – by extending the life of signatures they have already obtained[16] – is not an effective remedy for the constitutional violation found by the Court. The Court found that the Defendants wrongfully excluded Plaintiffs' proposal from the *2020* ballot.  Giving Plaintiffs a shot at getting their proposal on a later ballot does nothing to alleviate the damage from their wrongful exclusion from the current ballot.  Moreover, this aspect of Defendants' proposed remedy offers Plaintiffs very little because, even without

---

[15] In Defendants' stay motion, they argue that "the Court abused its discretion **in ordering** [a] signature reduction because it went beyond what was necessary to alleviate Plaintiffs' burden as alleged under the circumstances." (Mot., ECF No. 30, PageID.380-381; emphasis added.)  But the Court has never ordered a signature reduction.  The Court's Opinion and Order granting the injunction specifically said that the Court was not mandating any particular remedy. (*See* Op. and Order, ECF No. 17, PageID.255-256.)  And while the Court rejected Defendants' most recent proposed remedy, the Court did not state that an effective remedy had to include a signature reduction. Reducing the number of signatures Plaintiffs are required to collect is simply one option Defendants could employ in order to alleviate the violation of Plaintiffs' constitutional rights.

[16] While the Michigan Court of Claims ordered this remedy in a case involving a similar challenge (under state law) to Michigan's ballot access requirements for initiative proposals, *see Fair and Equal Michigan v. Benson*, Mich. Ct. Claims Case No. 20-000095 (June 6, 2020), that court did not find the same constitutional violation found by this Court.  That the Court of Claims chose this remedy thus sheds little light on whether the remedy is proper here.

Defendants' proposal, Plaintiffs would have a full opportunity to get their proposal on the 2022 ballot.  Defendants' suggestion that Plaintiffs try for the 2022 ballot is simply not a sufficient remedy.

For all of these reasons, the Court concludes that Defendants have not shown a likelihood of success on their appeal of either (1) the Court's injunction or (2) the Court's rejection of their proposed remedy.

## B

The Court is not persuaded that any of the other factors favor a stay. Defendants argue that "[w]hile there will be no irreparable harm to the Plaintiffs without an injunction, the issuance of an injunction will irreparably harm the State and its citizens." (Mot., ECF No. 30, PageID.383.)  Defendants insist that:

> Either the Sixth Circuit agrees that the injunction was unwarranted or the State Defendants' remedy was sufficient, or the Sixth Circuit upholds the injunction. If the Sixth Circuit finds that injunctive relief was not warranted, then Plaintiffs will be not harmed by staying an injunction to which they are not entitled. Or, if Sixth Circuit decides that the Defendants' proposed relief was sufficient, then the relief offered by the Defendants will be available to Plaintiffs without interference by the stay. On the other hand, if the Sixth Circuit decides that an injunction was appropriate and the proposed relief was insufficient, then the Defendants will likely be required to propose a different remedy that allows Plaintiffs another opportunity to access the November 2020 ballot. In any of these outcomes, Plaintiffs will not be inconvenienced by a temporary stay pending the determination of the appeal.

(*Id.*, PageID.385.)

16

But a stay would subject Plaintiffs to irreparable harm here. Plaintiffs need to know precisely how many signatures they need to gather and how many days they have to collect those signatures as quickly as possible so that they can best marshal their resources. As described above, there are still significant restrictions in place on the movement of Michiganders that will make for a very difficult signature-gathering environment. Any period of uncertainty will make it more difficult for Plaintiffs to access the 2020 general election ballot. And depending on the length of a stay, and the length of Defendants' appeal, the Court may or may not be able to remedy that harm given the other procedural steps that must be taken before ballots are printed.

In addition, for all of the reasons stated in the Opinion and Order, the Court remains persuaded that the public interest would not be served by a stay. As the Court explained, "'[t]he broader public interest [would] not [be] served by preserving the current signature-gathering scheme' which would have forced 'supporters [of ballot initiatives] to risk their health and criminal penalties to gather signatures.' [] Moreover, absent relief, Michigan voters would 'lose the ability' to vote for a ballot initiative that, 'absent the pandemic, would have [likely] been included on the ballot.' *Id.* For all of these reasons, the harm to the public and the Plaintiffs outweighs the State's legitimate interest in enforcing its election laws in the manner and timeframe established prior to the COVID-19 pandemic." (Op. and

17

Order, ECF No. 17, PageID.254, quoting *Esshaki*, 2020 WL 1910154, at *9.)  The same reasoning applies to Defendants' motion for a stay.

IV

For all of these reasons, Defendants have not persuaded the Court that they are entitled to a stay of the Court's preliminary injunction.  Defendants' motion for a stay pending appeal (ECF No. 30) is therefore **DENIED**.

**IT IS SO ORDERED**.

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 24, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on June 24, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764